## The United States v. Zephaniah Kingsley.

A grant for land in Florida by Governor Coppinger, on condition that the grantee build a mill within a period fixed in the grant, declared to be void; the grantee not having performed the condition, or shown sufficient cause for its non-performance.

Under the Florida treaty, grants of land made before the 24th January, 1818, by his catholic majesty, or by his lawful authorities, stand ratified and confirmed to the same extent that the same grants would be valid if Florida had remained under the dominion of Spain; and the owners of conditional grants, who have been prevented from fulfilling all the conditions of their grants, have time by the treaty extended to them to complete such conditions. That time, as was declared by this Court in Arredondo's case, 6 Peters, 748, began to run in regard to individual rights from the ratification of the treaty; and the treaty declares, if the conditions are not complied with, within the terms limited in the grant, that the grants shall be null and void.

In the construction of the Florida treaty, it is admitted that the United States succeeds to all those equitable obligations which we are to suppose would have influenced his catholic majesty to secure their property to his subjects, and which would have been applied by him in the construction of a conditional grant, to make it absolute; and further, that the United States must maintain the rights of property under it, by applying the laws and customs by which those rights were secured, before Florida was ceded; or by which an inchoate right of property would, by those laws and customs, have been adjudicated by the Spanish authority to have become a perfect right.

The cases decided by the Court relative to grants of land in Florida, reviewed and affirmed.

ON appeal from the superior court of East Florida.

In the district court of East Florida, in April, 1829, Zephaniah Kingsley presented a petition, claiming title to a tract of land situated on a creek emptying into the river St. John; which he asserted was granted to him by Governor Coppinger, on the 20th of November, 1816, while East Florida was held by the crown of Spain.

The petition stated, that in virtue of the grant, the petitioner had, soon after its date, entered and taken possession of the land, and was preparing to build a water saw-mill thereon, according to the condition of the grant; but was deterred therefrom by the disturbed state of that part of the province of East Florida, and the occupancy of the land by some of the tribes of Florida Indians, who were wandering in all directions over the country.

The grant referred to in the petition, was in the following terms:

"Considering the advantage and utility which is to accrue to the province, if that is effected which Don Zephaniah Kingsley proposes to do, it is hereby granted to him, that, without prejudice of a third party, he may build a water saw-mill in that creek, of the river St. John called M'Girt's; under the precise condition, however, that until he builds said mill, this grant will be considered null and void; and when the event takes place, then, in order that he may not suffer by the expensive preparations he is making, he will have the faculty of using the pines comprehended within the square of five miles, which he solicits for the supply of said saw-mill; and no other person will have a right to take any thing from it. Let the corresponding certificate be issued to him from the secretary's office.

"COPPINGER."

The district attorney of the United States, for East Florida, filed, at May term, 1829, an answer to the petition of Zephaniah Kingsley, requiring from the court that due proof should be made by the petitioner, of the matters set forth in the petition; and also that the grantee had prepared to build a water saw-mill on the land, as stated in the grant.

The answer also asserts, that the grant was made on the express condition, that, until the grantee built the mill, the grant was to be considered as null and void; and that he had wholly and entirely failed to build the mill, and still fails to build the same.

On the 6th July, 1833, an amended petition was filed, setting forth; that, upon the state and condition of the province of East Florida, east of the St. John's, being made known by the grantees of mill grants, and of the impossibility of complying with the conditions of the grants; governor Coppinger, by a verbal order or decree, made known that in consequence of the continued unsettled and disturbed state of the province, and of the impossibility of the grantees of mill grants complying with the conditions of the same with safety to themselves or their property, that the grantees should not, by a failure to erect their mills, thereby forfeit their title; but that the same should remain valid, and be exonerated from the compliance of the condition therein named, till the state of the country should be such as that the grantees could, with safety, erect their works.

The amended petition alleged, that the country was in a disturbed and dangerous state, from the date of the petitioner's grant, and for a long time previous, till the transfer of the province from

[United States v. Kingsley.]

Spain to the United States; and that your petitioner could not, with any safety to himself or his property, have erected said mill west of the St. John's, between the time of the date of his grant, and the transfer of the province as aforesaid.

To this amended petition the district attorney answered, and called for proofs of the allegations therein; and he also submitted to the court, that if the part of the province in which the land said to have been granted, had continued in a disturbed situation from Indian hostilities, it had been in that situation when the grant was made; and that this should not be an excuse for the non-compliance with the conditions of the grant. The answer alleged, that from 1821, part of the province has been entirely tranquil, but no attempt to erect the mill has been made.

At July term, 1835, a second amendment to the petition was filed, stating that soon after the issuing of the grant, the petitioner entered and took possession of a tract of the land surveyed to him under the grant, and actually began to build a mill upon it; but was deterred, by the dangerous situation of the country, from completing the same. The answer of the district attorney denied the allegations in this petition, and called for proofs of the same. No evidence was given to sustain the statement in the second amended petition. The assertion, that the uncertainty as to titles to the lands in the province since the transfer by Spain, is denied to be an excuse for the laches or negligence of the grantee.

After the production of written evidence, and the examination of witnesses, the district court gave a decree in favour of the petitioner; confirming to him the quantity of land mentioned in the grant. From this decree the United States prosecuted an appeal to this Court.

The case was argued by Mr. Butler, attorney general for the United States. No counsel appeared for the appellee.

Mr. Butler contended that the grant to the appellee was on condition, and the condition had not been complied with. The language of the grant is explicit; and no title to the land could be derived under it, until the terms were complied with: " Until he builds said mill, this grant will be considered null and void; and when that event takes place, then in order that he may not suffer by the expensive preparations he is making, he will have the faculty of using the

pines comprehended within the square of five miles, which he solicits for the supply of said saw-mill."

It is admitted, that according to the decrees of this Court, giving the timber on the land, gives the land; but in this case, the objection to this confirmation of the appellee's grant, rests on other grounds. No attempt to comply with the condition of the grant was made. It has been decided by this Court, that although such grants were on conditions precedent, yet if a party has commenced making the improvement, and is prevented by circumstances beyond his control from completing it, the grant, under an equitable view of it, will not be defeated.

The strongest case in favour of a grantee, is the case of Sibbald, 10 Peters, 313. In that case efforts were made to build the mill, and they were defeated. But in the case before the Court no such efforts were made. The condition is, that within six months the mill shall be built; and the consideration for this grant is the advantage and utility which will accrue to the province from the improvement. The allegation that the disturbed situation of the province would not permit the improvement, is of no value; when taken in connection with the circumstance, that when this grant was asked for, the province was in that situation. No proof is in the case of any attempt; and the second amended petition, in which this is asserted, is altogether unsupported by evidence. The allegation was not made until the decisions of this Court, making an attempt to comply with a condition in a grant sufficient to make such grant valid.

But there is another view of this case, upon which the claim of the petitioner to a confirmation of the grant should be refused.

Governor Coppinger, by a written order, declared that within six months the condition in all grants should be complied with. White's Compilation of the Spanish Land Laws, 250. The six months allowed by the order, expired long before the Florida treaty of cession.

Mr. Justice WAYNE delivered the opinion of the Court:

This is an appeal by the United States from a decree of the superior court of the eastern district of Florida, confirming a land claim.

It appears that Zephaniah Kingsley, on the 20th of November, 1816, being then an inhabitant of the province of Florida, petitioned Governor Coppinger, stating, "that wishing to erect a water saw-mill in that creek of the river St. John, called M'Girt's, on a vacant place, and it being necessary for that purpose to have a quantity of

timber sufficient to supply said mill and establishment, he supplicates your excellency to be pleased to favour him with your superior permission to build the same on the place aforesaid, with its area of five miles square of land as the equivalent thereof, for its continued supply of timber: bounded south-east and south by lands granted to Ferguson and Doctor Lake; south-west and west by vacant lands; north by Don Juan M'Intosh's land, and east by lands of said Kingsley, and the river St. John."

Upon this petition the governor made the following decree:

"Considering the advantage and utility which is to accrue to the province, if that is effected which Don Zephaniah Kingsley proposes to do, it is hereby granted to him, that without prejudice of a third party, he may build a water-mill on that creek of the river St. John, called M'Girt's; under the precise, condition however, that until he builds said mill, this grant will be considered null and void: and when the event takes place, then, in order that he may not suffer by the expensive preparations he is making, he will have the faculty of using the pines comprehended within the square of five miles, which he solicits for the supply of said saw-mill; and no other person will have a right to take any thing from it. Let the corresponding certificate be issued to him from the secretary's office.

"St. Augustine, 2d Dec. 1816."                    "COPPINGER.

Upon this decree, the petitioner states, that soon after the date of it, he entered upon and took possession of the land granted in the situation mentioned in said grant, and was preparing to build a water saw-mill, agreeably to the condition of the grant; but was deterred therefrom by the disturbed state of that part of the province of East Florida, and the occupancy of the land by some of the tribes of Florida Indians, who were then wandering in all directions over the country. The appellee then insists that his right to the land is embraced by the treaty between Spain and the United States; gives a narrative of his submission of his claim to the board of commissioners, under the act of congress, entitled "an act amending and supplementary to an act for ascertaining claims and titles to land, in the territory of Florida, and to provide for the survey and disposal of the public lands in Florida," passed 3d March, 1823; that the commissioners reported unfavourably upon it, which he insists was contrary to the law and evidence produced in the cause: and further, that the report of the commissioners upon his claim was not final, as the tract of land claimed by him, contains a larger quantity than the

commissioners were authorized to decide upon by any of the acts of congress.

The petition of the appellee, of which an abstract has been just given, was filed on the 21st April, 1829. In the following month, the United States, by the United States' attorney, filed an answer to this petition, denying, for sundry causes and reasons, the entire existence and equity of the appellee's claim: and in August of the ensuing year, the United States' attorney amended his answer, referring to certain orders of governor Coppinger, dated the 27th October, 1818, and on the 19th January, 1819: the first of which limits the time to six months from the 27th October, 1818, within which all grants and concessions of land which had been made on condition for mechanical works, to wit, factories, saw-mills, &c., were to revert to the class of public lands, and to be declared vacant; unless the grantees, or concessioners, should comply with the conditions of such grants or concessions; and the second of which declares all such conditional grants or concessions null and of no effect, in those cases where the persons in whose favour they were made, had remained inactive, having done nothing to advance the establishment of those works. See White's Compilation, 250, 253, 256, 257, for these orders.

The United States' attorney alleges the appellee to be one of those persons whose supposed concession was null and void under the first order; and that it was entirely annulled and set aside by the last, as he had not then, nor had not since established or advanced, in any manner, the building of his mill, but had wholly failed and neglected to do so. To this answer, the appellee put in a general replication; and the cause came, by regular continuance, to the term of the court in November, 1832, when permission was given to the appellee to amend his petition. In July, 1833, he filed the amendment, stating that the disturbed and dangerous condition of the province west of the St. John's river, which continued from 1812 to the exchange of flags, had induced Governor Coppinger to declare, by a verbal order and decree, that the unsettled and disturbed state of the province, and the impossibility of the grantees of mill-grants to comply with the conditions of the same, with safety to themselves and their property, that the grantees should not, by a failure to erect their mills, forfeit their titles.

Of the existence, however, of any such modification of the con-

SUPREME COURT.

-dition of such grants, by any verbal order and decree, the appellee gave no proof on the trial of this cause.

In the amendment of the appellee's petition, the United States' counsel replies, denying the existence of any such verbal order and decree by Governor Coppinger; and stating, that if there was any such danger from the disturbed condition of the province, as the appellee had alleged, that it existed as well at the time when he applied for the grant, and when he accepted the same, as at any time afterwards. In this state of the pleadings, the cause was brought to trial, as well upon the evidence on the part of the United States, as upon the part of the appellee; but was not then decided. At the July term of 1835, the appellee filed, by permission of the court, another amendment to his petition, in which, after reciting the surveys made under the decrees ot the governor upon his petition, he further says, that soon after the grant was made to him, he took possession of the land, and actually began to build a water saw-mill on M'Girt's creek, pursuant to the condition of the grant; but that he was deterred and prevented from completing the same by the disturbed and dangerous state of the country, which continued until the cession of Florida by Spain to the United States. And after that cession, he states he was deterred from proceeding to the further performance of the conditions of said grant, by the great uncertainty in which his right and title to said land was involved by said cession. To this amendment of the petition the United States' attorney replied, repeating the facts and objections to the claim of the appellee made in his previous answers; and further insisting that the surveys, upon which the appellee relied, were made after the 24th of January, 1818, and are not agreeable to the calls of the said supposed grant: and that they are null and void by the provision of the latter clause of the 8th article of the treaty between Spain and the United States, of the 22d February, 1819.

Upon these pleadings and the evidence, the court has decreed the appellee s claim to be valid; that it is in accordance with the laws and customs of Spain; and under and by virtue of the late treaty with Spain; and under and by virtue of the laws of nations, and of the United States.

We think differently from the court upon all the grounds stated in the decree. They open a wide subject of remark; but we abstain from discussing any of them, except the application of the treaty to this claim, or of the laws and customs of Spain. These points we shall ouch very briefly. We first observe, that no

[United States v. Kingsley.]

case of a land claim in Florida, confirmed by this Court under the
treaty, either in terms, or by necessary inference from what the
Court has said, covers this case. We view this claim under the de-
cree of Governor Coppinger, as a permission to enter upon the land
designated in the petition and decree, in which land the appellee
did not and could not acquire property, or even inchoate title; such
as embraced in the 8th article of the treaty, or by this Court's con-
struction of it, until he had, in good faith, prepared to execute the
condition which the appellee held out as the inducement to obtain a
grant: or in other words, we think the decree of the governor con-
tains a condition precedent, to be performed by the appellee before
the grant could take effect. In this case the appellee never attempted
to perform the condition: there is no proof of his having done so in
good faith, by the expenditure of money or application of labour. On
the contrary, there are, in the original petition of the appellee to the
court below, and in all the subsequent amendments of it, from 1829
to 1833, his declarations that he had not done so, until the amend-
ment made in 1835; when he states, for the first time, that he actu-
ally began to build a water saw-mill, according to the conditions of
the grant a short time after it was made, but that he was prevented
from completing it by the disturbed and dangerous condition of the
country.

The only proof given by him of his having actually began to
build, is very equivocal, and should have been rejected by the court,
on the ground of its being hearsay; except so much of it as relates
to the remains of some work or mill-dam, which of itself could not
be evidence, until, by other proof, the appellee had established the
fact of such work having been done by himself, as the witness testi-
fying, says expressly that it was only from hearsay that he had said
that work was done by the appellee. The witness says, he does not
know of his own knowledge that the appellee ever made any at-
tempt or preparations for building a saw-mill on said mill seat tract,
but that he had seen timber on the said tract; was told it was got by
Kingsley for the purpose of building a saw-mill; that he afterwards
saw a dam had been erected on each side of the stream, in the bot-
tom of the stream saw timbers laid, as witness supposed, for the sills
of a saw-mill; that he only knows from hearsay, that said prepara-
tions were made by Kingsley; that a part of the preparations are
still remaining, and to be seen on said tract; that he first saw the tim-
ber abovementioned, in the year 1817 or 1818, and shortly after saw

the dam and sills aforesaid; that the said timber was mostly destroyed by fire. And by the record we are left to conclude that these works were made by Kingsley, without any, even probable proof that he had at any time taken possession of the land. We cannot do so; and if we could, it would be deemed by us no compliance with the condition contained in the governor's decree or concession in his favour, as the work was discontinued for an insufficient cause, that was, the disturbed and dangerous condition of the country. All the witnesses concur in stating there was no more danger after the appellee petitioned for the land, than there had been before and at the time of his application. The appellee then cannot be permitted to urge as an excuse, in fact or in law, for not complying with his undertaking, a danger which applies as forcibly to repudiate the sincerity of his intention to build a mill when he petitioned for land for that purpose, as it does to his inability from such danger to execute it afterwards. Under the treaty, it is true, that grants of land made before the 24th January, 1818, by his catholic majesty, or by his lawful authorities, stand ratified and confirmed, to the same extent that the same grants would be valid, if Florida had remained under the dominion of Spain; and the owners of conditional grants, who have been prevented, by the circumstances of the Spanish nation, from fulfilling all the conditions of their grants, have time by the treaty extended to them to complete such conditions. That time, it was determined by this Court, in Arredondo's case, 6 Peters, 748, 749, began to run, in regard to individual rights, from the ratification of the treaty; and the treaty declares, if the conditions are not complied with within the terms limited in the grants, that the grants shall be null and void. It is admitted, that in the construction of this article of the treaty the United States succeeds to all those equitable obligations which we are to suppose would have influenced his catholic majesty to secure to his subjects their property; and which would have been applied by him in the construction of a conditional grant to make it absolute. And further, in the construction of this article of the treaty, it must be conceded that the United States must maintain the rights of property under it, by applying the laws and customs by which those rights were secured before Florida was ceded or by which an inchoate right of property would, by laws and customs, have been adjudicated by Spanish authority, to have become a perfect right; by applying, in the first instance, in such cases, as was said in Arredondo's case, the principles of justice

according to the rules of equity; and in the second, all those laws and customs decisive of a right of property, whilst the party claiming the right was a subject of Spain. Test then the case before us by the most liberal equity, and it will appear that the claim of the appellee cannot be sustained by any effort by him to perform the condition of the governor's grant; either before the ratification of the treaty, or since. Indeed, in the last amendment of his petition, in 1835, he states he was prevented from proceeding to the further performance of the condition of said grant, by the great uncertainty in which his right and title to the land was involved by the cession.

These Florida grants, or concessions of land upon condition, have been repeatedly confirmed by this Court; and it will apply the principles of its adjudications to all cases of a like kind. It will, as it has done, liberally construe a performance of conditions precedent or subsequent, in such grants. It has not, nor will it apply in the construction of such conditions in such cases, the rules of the common law. But this Court cannot say a condition wholly unperformed, without strong proof of sufficient cause to prevent it, does not defeat all right of property in land, under such a decree as the appellee in this case makes the foundation of his claim.

Arredondo's grant, confirmed by this Court, 6 Peters, was a clear case of a grant in fee for past services and commendable loyalty to his sovereign, with a condition subsequent, of a nature the performance of which must have been a matter of indifference as well to the king of Spain as to the United States, after a cession of Florida was made. The condition was, that the grantees should establish on the land two hundred Spanish families, and that they were to begin to carry into effect the establishment within three years from the date of the grant: and there was no time limited for its completion. This Court said, in that case, 6 Peters, 745: "From the evidence returned with the record, we are abundantly satisfied that the establishment was commenced within the time required, (which appears to have been extended for one year beyond that limited in the grant;) and in a manner which, considering the state of that country, as appears by the evidence, we must consider as a performance of that part of the condition."

The case of Segui, 10 Peters, 306, was a grant in consideration of services to the Spanish government, and for erecting machinery for the purpose of sawing timber. That grant was confirmed by this Court, upon the ground that the governor considered the services,

[United States v. Kingsley.]

of Segui a sufficient consideration, and made the grant absolute. Seton's case, 9 Peters, 311, was a decree or permission of the governor, in all particulars like that now before us; and Seton's right to the survey which has been made, and to the equivalent quantity to make up the extent of the original concession, was confirmed by this Court; upon the positive proof that Seton had built his mill in a year after the date of the decree upon which he claimed. Sibbald's case, 9 Peters, 313, another like Seton's and that before the Court, were confirmed by this Court, upon the ground that Sibbald had performed the condition according to the rules of equity which govern these cases. Sibbald, in good faith, and within a reasonable time after the decree in his favour, began to build his mill; expended five thousand dollars towards it; had his horses and negroes stolen while the mill was building; his mill-dam carried away by a freshet, in the absence of his millwright, who was in pursuit of the stolen property; rebuilt his mill in 1827, which was destroyed by fire the same year; and the year after, built again another mill of twenty-horse power, which could saw twenty thousand feet of lumber a day.

It remains only for us to say a word concerning the laws and customs of Spain, supposed by the learned judge in the court below, applicable to the confirmation of this claim under the treaty. The fact that no instance is known of land so decreed having reverted to the class of public lands, for the non-performance of the condition, does not prove a custom; unless a current of cases can be shown in which claimants have held the land without performance. Besides, the existence of any such custom is disproved by the decree for the land itself; by the subsequent decrees of the Spanish governor, declaring lands granted upon condition would be null and void within a certain time, if the conditions were not performed; and by the treaty itself, which stipulates for the performance of conditions within terms after the treaty was made, contained in the grants; and which is recognised by this Court by its decision, that the time given only begins to run against individual rights, from the date of the ratification. As to the laws of Spain, supposed to aid the case, we remark, it being conceded that the governor had authority to make grants and concessions, and to give permission to persons to enter upon lands upon conditions; nothing less than a law dispensing with the performance of them, or a release of the performance of them by the governor, sanctioned by the general royal authority under which he acted; or a release by royal authority, after grants were made ge-

[United States v. Kingsley.]

neral in its application, or applicable to some particular case or class of cases, can be admitted, proprio vigore, as a release of the obligations upon grantees to perform the conditions of these grants. It is not pretended that any such law or release exists.

Mr. Justice BALDWIN dissented.

This cause came on to be heard on the transcript of the record from the superior court for the eastern district of Florida; and was argued by counsel. On consideration whereof, it is the opinion of this Court, that the petitioner having failed to fulfil the condition of the grant, that the said grant or concession is null and void; and that the said petitioner has no right or title to the land. Whereupon, it is now here decreed and ordered by this Court, that the decree of the said superior court in this cause be, and the same is hereby reversed and annulled; and that this cause be, and the same is hereby remanded to the said superior court, with directions to enter a decree in conformity to the opinion of this Court.