THE UNITED STATES, APPELLANTS, *v.* PEDRO MIRANDA AND OTHERS, APPELLEES.

A Florida land claim. On a petition from Pedro Miranda, stating services performed by him for Spain, Governor White, the Governor of East Florida, on the 26th November, 1810, made a grant to him of eight leagues square, or three hundred and sixty-eight thousand six hundred and forty acres of land on the waters of Hillsborough and Tampa bays, in the eastern district of Florida. No survey was made under this grant while Florida remained a province of Spain; nor was any attempt made to occupy or survey the land, until after the cession of Florida to the United States. In 1821, it was alleged that a survey was made by a surveyor of East Florida. Held, that the grant was void; no land having been severed from the public domain previous to the 24th January, 1818, and because the calls of the grant are too indefinite for locality to be given to them.

Cited, Percheman's Case, 7 Peters, 51; Kingsley's Case, 12 Peters, 476; Arredondo's Case, 6 Peters, 741; Forbes's Case, 15 Peters, 182; Buyck's Case, 15 Peters, 215; O'Harra's Case, 15 Peters, 275; Delespine's Case, 15 Peters, 319.

The settled doctrine of the Supreme Court, in respect to Florida grants, is, that grants embracing a wide extent of country, or with a large area of natural or artificial boundaries, and which granted lands were not surveyed before the 24th of January, 1818, and which are without such designation as will give a place of beginning for a survey, are not lands withdrawn from the mass of vacant lands ceded to the United States in Florida, and are void; as well on that account as for being so uncertain that locality cannot be given to them.

ON appeal from the Superior Court of East Florida.

Pedro Miranda and others, on the 9th of May, 1829, presented a petition to the Superior Court of East Florida, asking for the confirmation of a grant from the Spanish government of Florida, for eight leagues square, equal to three hundred and sixty-eight thousand six hundred and forty acres of land, situate on the waters of Hillsborough and Tampa bays, in the eastern district of the territory of Florida.

The petition of Pedro Miranda and the grant, are as follow:

TRANSLATION.

His Excellency the Governor:

Don Pedro Miranda, second pilot of the launch of the bar of this port, with the most profound respect represents to your excellency:

That he has the honour to serve his Catholic majesty [whom

may God preserve] from the year 1798, when he was employed as rower of the said launch, in which capacity he remained until he was promoted to his present post, on account of his known merits and experience. Moreover, your excellency well knows the veracity of his good conduct, fidelity, and devotion to the service of his majesty; of which he has given proofs in various expeditions, which by order of his government your petitioner undertook along the water courses of this province, when it was overrun by rebels; and as for so distinguished services and others rendered to the satisfaction of your excellency, your petitioner has not received any compensation whatever; and as he finds himself in a penurious condition, and without any other expectations but from the protection of your excellency; therefore he supplicates your excellency to be pleased, in remuneration of all which he has represented, and in consideration of his present destitute situation, to grant to him in absolute property, a square of eight leagues in the royal lands which are found on the waters of Hillsborough and Tampa bays, in this province, in virtue of royal orders on the subject of granting lands gratuitously to Spanish subjects; which favour your petitioner hopes to receive from the justice of your excellency. *St. Augustine of Florida,* 19*th November,* 1810.

### DECREE.

*St. Augustine of Florida,* 26*th November,* 1810.

The merits and services alleged by this party being well known to this government, I grant to him in the terms which he solicits, the said quantity of land in the places which he indicates, without prejudice to a third party; and as a proof of this grant to be shown at all times, let a certified copy of this proceeding be issued to him from the secretary's office for his security.

WHITE.

The petition to the Court stated that said tract or parcel of land has been divided and laid off into townships of twenty-three thousand and forty acres each; that the said division of the said land into townships, as aforesaid, was made by one Charles Vignoles, in the year one thousand eight hundred and twenty-one; the said Charles Vignoles then being a surveyor of East Florida.

After hearing testimony and arguments of counsel, the Superior Court of East Florida gave a pro formâ decree in favour of

the petitioners, for eight leagues square, being forty-six thousand and eighty acres; and the United States, and the claimants, prosecuted this appeal.

The case, on the appeal of the United States, was argued on the part of the United States, by Mr. Duvall, and Mr. Legare, the attorney-general of the United States; and was submitted on printed arguments by Mr. Garr and Mr. Ogden, for the appellees.

The arguments of the counsel on numerous points, submitted for the appellants and the appellees, are omitted; as the decree of the Court was made exclusively, on the question of the validity of the grant, under the cession of Florida to the United States, by the treaty with Spain.

For the appellants, it was contended, that as no survey, possession, or cultivation of the land had been proved, as was necessary according to the laws, usages, and ordinances of the Spanish government, to vest a valid title to the land in the claimant; the decree of the Superior Court of East Florida should be reversed.

Mr. Justice WAYNE delivered the opinion of the Court.

Appeal from the Superior Court of East Florida.

The defendants in error claim title to a tract of land, under a grant made by Governor White, on the 26th November, 1810, to Don Pedro Miranda, containing eight leagues square, or three hundred and sixty-eight thousand six hundred and forty acres, on the waters of Hillsborough and Tampa bays, in the eastern district of the territory of Florida.

Miranda's petition for the grant, and the grant, are in pages 153, 154.

After a recital of services, he asks as a remuneration, and in consideration of his destitute condition, that there may be granted to him in absolute property, a square of eight leagues in the royal lands which are found on the waters of Hillsborough and Tampa bays, in virtue of royal orders on the subject of granting lands gratuitously to Spanish subjects. The governor, in reply, acknowledges his services, and grants to him "in the terms as he solicits, the quantity of land in the places which he indicates, without prejudice to a third party;" and directs, "a certified copy of the proceeding to be issued to him from the secretary's

office for his security. It does not appear that such certified copy was given to him; but Aguilar, who was secretary when the grant was made, deposes that he remembers that the grant was made to Miranda for his deserts and services on the shores of Hillsborough and Tampa bays; "that it was a part of eight leagues square, or thereabouts;" and he further says, the hand-writing to the grant is the legitimate signature of Governor White. The district attorney admits that he has seen in the office of the archives of Florida, a document, of which that introduced by the complainants is a copy.

No survey, however, of the land was made whilst Florida was a province of Spain. Nor was any attempt made by the grantee, or by any agent or person claiming under him, to occupy any land under this grant, or to make a survey of it, until after the Floridas had been ceded to the United States. The complainants allege that one was made in 1821, by Charles Vignolles, a surveyor of East Florida; and this survey is the first assertion of right in the premises by the grantee. After this survey was made, the grantee conveyed portions of the land, between the years 1822 and 1828, to the claimants associated with him in this suit. They allege that a claim for the whole of the lands was submitted to the examination of the commissioners appointed under the act of Congress of 3d March, 1823. 3 Story, 1907, entitled an act for ascertaining claims and titles to lands in the territory of Florida. The survey made by Vignolles, however, is not in the record; nor does it seem to have been in evidence on the trial of the cause in the Court below.

By agreement between the solicitors and counsel of the parties, a pro formâ decree was given for forty-six thousand and eighty acres of land, in favour of the complainants, situated on the waters of the bays of Hillsborough and Tampa; and from this decree the cause has been brought to this Court by appeal by the United States.

We do not think it necessary to discuss, in detail, the points urged in argument for and against the confirmation of this grant.

Two considerations are decisive of its invalidity.

The grant is void, no land having been severed from the public domain previous to the 24th January, 1818; and because the calls of the grant are too indefinite for locality to be given to them.

The petitioner asks for "a square of eight leagues, in the royal lands which are found on the waters of Hillsborough and Tampa bays." The grant is, " I grant to him, in the terms which he solicits, the said quantity of land in the places which he indicates."

Tampa or Espiritu Santa, as it was known or called before Florida was ceded to the United States, is the largest on the Gulf of Mexico. It is at least forty miles long, and in one or more places, from thirty to forty miles broad. Hillsborough river empties into it from the north. To the southeast of Hillsborough river are the Indian and Alafia rivers. Lower down the bay, on the same side, is Manali river, from sixteen to twenty miles wide at its mouth; and Oyster river is twenty miles below the Manali. The eastern part of this bay was by the British called Hillsborough; and the little bay attached to the north side, Tampa. The little Tampa is an elliptical basin, about ten miles in diameter. There are many islands in the bay, especially on the western part and at its mouth; and Tampa extends to Sarragossa bay. Williams's Territory of Florida, page 24.

Where, in this extensive area, shall this grant be located? Shall it be on either of the rivers emptying into the bay? On the eastern or western side of the bay? At its head, or at its mouth? Shall it be a contiguous body of land on Hillsborough bay, or on little Tampa; or shall it be divided in equal parts on both? If the grantee claims a right to survey on Hillsborough and little Tampa as the places indicated in his petition, then it cannot be taken in a single body " of a square of eight leagues;" for the former being on the east part of the bay, and the latter on the north side; neither the dimension nor form of the grant could be surveyed touching on both. And this, whether it is to be taken in a square of four equal sides, or in a rectangular parallelogram with a part of one third of the bay: which last is the mode prescribed by the Spanish authorities for surveys on navigable waters.

Shall it be left to the grantee to choose, or shall the Court arbitrarily fix upon a point for the beginning of a survey? If there was a starting point, the claimants might, putting aside the other questions in the case against the confirmation of the grant, be entitled to a survey. But there is none. No survey was made under the grant whilst Florida belonged to Spain. Indeed,

VOL. XVI.—O.

it appears from the record, that neither the governor making the grant, nor any other Governor of Florida after him, ever gave an order for a survey of this grant. The grantee, though all the time in Florida, from the time when the grant was given until the treaty with Spain was made, a period of nine years, did not apply, or if he did, did not receive from the authorities of Spain an order for a survey. The case shows that in other grants of land made to him, subsequently to the date of that now under consideration; and there are nine or ten of them in the record; pages 81 to 93, inclusive; that Miranda uniformly had them consummated by a royal title. And it is also worthy of remark, that he states in his petition to Governor Coppinger, on the 16th of September, 1817, after reciting his services from 1794 to 1812, in the defence of the province, and that he had had in his charge divers extraordinary commissions, he states, "for which he had never had any compensation whatever." What, then, had become of his grant for a square of eight leagues in the royal lands which are found on the waters of Hillsborough and Tampa bays?

The locality then, of the premises, was not acknowledged by the authorities of Spain. No effort was made to give identity to the grant before the treaty was ratified.

Is such a grant protected by the treaty? We think not. The eighth article of the treaty is: "All the grants of land made before the 24th of January, 1818, by his Catholic Majesty, or by his lawful authorities in the said territories, ceded by his majesty to the United States, shall be ratified and confirmed to the persons in possession of the lands, to the same extent that the same grants would be valid if the territories had remained under the dominion of his Catholic Majesty. But the owners in possession of such lands, who by reason of the recent circumstances of the Spanish nation, and the revolutions in Europe, have been prevented from fulfilling all the conditions of their grants, shall complete them within the times limited in the same, respectively, from the date of this treaty, in default of which the said grants shall be null and void. All grants made since the 24th of January, 1818, when the first proposal, on the part of his Catholic Majesty for the cession of the Floridas was made, are hereby declared and agreed to be null and void." The words in the foregoing

extract shall be ratified and confirmed to the persons in possession of the land, have been decided by this Court, in Percheman's Case, 7 Peters, 51; to mean, "the grants shall remain ratified and confirmed to the persons in possession of them, to the same extent, &c., &c.;" or, as this Court said in Kingsley's Case, 12 Peters, 476, "stand ratified and confirmed to the same extent that the same grants would be valid, if Florida had remained under the dominion of Spain." And the words "in possession of them," have by this Court, in Arredondo's Case, 6 Peters, 741, and in all other cases upon Florida grants, after it, been determined not to imply occupation or residence only, but a legal seisin. The Court said in that case, "By grants of land we do not mean the mere grant itself, but the right, title, legal possession, and estate, property, and ownership, legally resulting upon a grant of land to the owner." But, in the case before us, from the want of survey, or some point for the beginning of one, there can neither be a seisin in fact nor in law; for identity of premises is as essential for a seisin in law, as it is necessarily implied in a seisin in fact. The grantee, then, can only claim validity for this grant to the same extent that it would have been valid, if the territories had remained under the dominion of his Catholic Majesty. And this brings up the questions, how far this grant was valid when the Floridas were ceded to the United States; or whether, in the situation in which this grantee stood when the treaty was made, he had more than a permission to ask for the means of having the lands identified, that he might have a right of possession.

The grant was made in 1810. No order of survey was made; nothing was done to withdraw the land from the general mass of property, or to show what it was, which was to be withdrawn. It therefore remained in the King of Spain, with the power to consummate that which had been done on Miranda's petition, into a complete title; according as it might be his pleasure to do or not to do so. And when he ceded the Floridas to the United States, the latter were placed in respect to this grantee, exactly in the situation in which his Catholic Majesty had stood. This being so, the eighth article of the treaty, on the most liberal interpretation of the intentions which actuated the high contracting parties, imposes upon the United States no obligation to make a title to lands of which the grantee had neither an actual seisin,

nor a seisin in law. Identity is essential for the latter, and has uniformly been, in the contemplation of this Court, when it has confirmed Florida grants, inchoate or complete. This Court said in Forbes's Case, 15 Peters, 182, " the Courts of justice can only adjudge what has been granted, and declare that the lands granted by the lawful authorities of Spain, are separated from the public domain." The grant now sought to be confirmed, was not so separated by survey, or by any such distinctive call as will admit of a survey. In Forbes's Case, just mentioned, the grant was for land "in the district or bank of the river Nassau;" and the Court say, after noticing the uncertainty of the description for the location of the land, "No survey of the land granted was ever made; the duty imposed upon the grantee to produce the plat and demarcations in proper time, was never performed. This was a condition he assumed upon himself; the execution and return of the survey to the proper office, in such case, could only sever the land granted from the public domain." "No particular land having been severed from the public domain by John Forbes, his was the familiar case of one having a claim on a large section of country, unlocated," &c. &c. " In such a case, the government has ever been deemed to hold the fee unaffected by a vested, equitable interest, until the location was made, according to the laws of the particular country." And though, in the decree granting the land to Forbes, the governor says, "It will be 'the duty of the party to produce the plat and demarcations in the proper time;" it does not vary the principle, but rather serves to establish it; that "in grants of land with uncertain designations, to be made on a large district of country, they must have been severed from the public domain by survey, or be void for want of identity." Upon mature deliberation, the same doctrine was held in Buyck's Case, 15 Peters, 215, which was a grant for lands "at Musquito," "south and north of said place." Also in O'Harra's Case, 15 Peters, 275; again in Delespine's Case, 15 Peters, 319.

Indeed, the settled doctrine of this Court, in respect to these Florida grants, is, that grants for lands embracing a wide extent of country, or within a large area of natural or artificial boundaries, and which granted lands were not surveyed before the 24th of January, 1818, and which are without such designations as will

give a place of beginning for a survey, are not lands withdrawn from the mass of vacant lands, ceded to the United States in the Floridas; and are void, as well on that account, as for being so uncertain that locality cannot be given to them.    The decree of the Court below is reversed, and the grant declared to be invalid.