ANN BUYCK, WIDOW OF DON AUGUSTIN BUYCK, DECEASED, AND THE UNKNOWN HEIRS OF SAID BUYCK, APPELLANTS, *v.* THE UNITED STATES, APPELLEES.

The decree of the Superior Court of East Florida, by which a grant for fifty thousand acres of land, made by Governor White, the Spanish governor of East Florida, dated July 29, 1802, was rejected, affirmed.

The land had been granted by Governor White, on a petition from the grantee, stating his intention to occupy and improve the same with Bozale negroes, and native citizens of the United States; and stating that other grants of the same lands had been made, on condition of settlement, which conditions had not been performed, and such grants were therefore void. The petitioner promised to make the settlement within an early period after the grant. The Governor granted the land, referring to the petition; also, with the condition, that the grantee should not cede any part of the land, without the consent of the government. No improvement or settlement was at any time made on the land by the grantee. Held, that the government of the United States were not bound, under the Florida treaty, to confirm the grant.

The description of the portion of land asked for from the Spanish Governor, "lands at Musquito, fifty thousand acres, south and north of said place," is not sufficiently definite; and from such a description, no exception could be made from the public lands acquired by the United States under the Florida treaty. The regulations for granting lands in Florida, by the Spanish authorities, required that grants should be made in a certain place; and there were no floating rights of survey out of the place designated in the grant; unless where the land granted could not be got there in its exact quantity, and an equivalent was provided for.

The laws and ordinances of the government of Spain, in relation to grants of lands by the Spanish government, must be of universal application in the construction of grants. It is essential to the validity of such grants, that the land granted shall be described, so as to be capable of being distinguished from other things of the same kind, or capable of being ascertained by extraneous testimony.

The cases of Sibbald, 12 Peters, 313. 348. Arredondo, 6 Peters, 133. Fleming, 478. Huertas, 488. Arredondo, 13 Peters, 133, cited.

APPEAL from the Superior Court of East Florida.

On the 23d of May, 1829, Ann Buyck, the appellant, presented a petition to the Superior Court for the Eastern District of Florida, claiming title to a tract of land containing fifty thousand acres, south and north of the Musquito river.

The title on which the claim was founded, was a Spanish

grant from Governor White. The proceedings on which the grant was made, and the grant, were as follow :

His Excellency the Governor :

Don Augustin Buyck, a resident of this place, with the greatest respect, appears before your excellency, and says :

That, having a large number of new negroes, (negroes bozales,) and there being also some white persons, native citizens of the United States of America, who wish to join him for the settlement and cultivation of the lands at Musquito, he solicits that this government will grant him fifty thousand acres of land, south and north of said place, with the privilege of, and asking for more in proper time, as he may need it ; within which lands it is not the intention of your petitioner, that the tract which your excellency granted to Don Ambrosio Hull should be embraced ; who, at this time, has abandoned the possession of his settlement, owing to Indian hostilities, but who is determined to return to said settlement, in consequence of the protection that a large number of settlers in that neighbourhood may afford : and that the right to the grant I pray for shall not be interrupted by the right that some individuals of this place, or foreigners may have, or pretend to have, to whom part of said lands may have been granted by order of your excellency ; and because the first of these persons have suffered a long time to elapse without taking any steps for the pretended cultivation of said land, which makes it appear that their right has, in some degree, become diminished, and there being others who offer to cultivate said land, in accordance with the wishes of the king, who is desirous of having the whole province settled ; and as regards the latter, the same reasons apply in consequence of their not having complied with what they promised. Your petitioner promises, positively, to carry into effect said settlement, between the period embraced from this time and the month of December next ; after which period it will remain discretionary with your excellency to grant the said tract to any other person who may ask for it. The considerable number of settlers whom your petitioner offers to carry to that point, will open a vast field towards fulfilling his majesty's will, and to refrain the savages from committing robberies and hostilities, who have by their incursions, until now,

troubled the plantations situated north of the capital; and your petitioner, not doubting that such considerations will have their due weight on your excellency's mind, who is always disposed to do what seems best for the service of the king and of the country, your petitioner respectfully reiterates his prayer for this favour from the accustomed bounty of your excellency.

(Signed)    A. BUYCK.

*St. Augustine of Florida, 22d July,* 1802.

### ORDER FOR REPORT.

*St. Augustine, July* 22*d*, 1802; Let the engineer commandant report.

(Signed)    WHITE.

### REPORT OF ENGINEER.

Being informed of the premises, and in compliance with the foregoing decree, I report to your excellency, that the settlement and cultivation of the lands at Musquito, presents no obstacle either to the general or particular defence of the province, and so far as this department is concerned, there may be granted to the petitioner, for the purposes he mentions, the number of acres which your excellency may deem proper. This is all which I have to report to your excellency, who will act in the matter at your pleasure.

(Signed)    NICHOLAS BARCELO.

### GRANT TO BUYCK.

*St. Augustine, 29th July,* 1802.

The land which the party solicits is granted to him, in manner as he proposes; and with the condition that he shall not cede any part thereof to any person whatever, without the knowledge and approbation of the government.

(Signed)    WHITE.

A certificate was issued.

(Signed)    PIERRA.

I certify that the foregoing is a correct translation of the annexed document, written in the Spanish language.

JOHN M. FONTANE,

*Translator and Interpreter S. C. D. E. F.*

*St. Augustine, July* 16*th,* 1838.

The decree of the Superior Court of Florida was against the claim of the petitioner, and this appeal was prosecuted by him.

The case was argued by Mr. Downing, for the appellant; and by Mr. Gilpin, Attorney General, for the United States.

Mr. Downing contended:

1. That the grant was made without conditions precedent, and vested a title in the grantee.

2. The grantee never sold any portion of the land; and the title of the appellant is complete.

Mr. Gilpin, Attorney General, for the United States.

The principles involved in this case, are essentially the same as those discussed in that of The United States *v.* The Heirs of Forbes. The evidence of the alleged grant is insufficient; the locality of the tract is not ascertained, either by the terms of the concession itself, or by a subsequent survey; and the conditions, express and implied, have not been performed.

1. The evidence of the grant consists of a copy of the memorial and concession thereto annexed, which copy is certified by a person named Pierra, in the following words: "a certificate issued." This is clearly not within the rule laid down by this Court, in the case of The United States *v.* Wiggins, 14 Peters, 348. Not only is there no evidence, even indirect, of the existence of the original concession, or of its being deposited in the archives, or of the truth of the copy: but the presumptive evidence is certainly strongly against its genuineness. There is no petition, order, or certificate of survey produced, or even alleged to have been issued. There is no corroborative evidence to supply this deficiency, or adequate to sustain the alleged grant. The only evidence of this sort, is a translation of an alleged as-

sessment of thirty dollars, made by Governor White, in 1802, just after the date of the alleged grant, on "Don Augustin Buyck, for himself, and his settlers on the fifty thousand acres of land south;" and an alleged receipt, dated about à year after, of Bernardo Segui, to the attorney of Buyck, for the thirty dollars. From that time to 1823, there is no evidence, even of a claim to any land, founded on such a grant. These papers were objected to in the Court below, and were supported by no proof whatever of the existence of the originals, the signatures of the Governor, or Segui, or the correctness of the copy; but had they been duly authenticated in these respects, it is yet clear that they are not such corroborative evidence of the grant, as will be required; there is no ground but mere conjecture, to suppose they referred to the lands said to have been granted. Add to this, the well known fact, that Governor White was remarkable for his uniform refusal to make large grants, on slight causes; and it must be admitted, that no copy of a concession has ever been adduced, which is less entitled to credit in the absence of the original.

2. But if granted, the tract never was, and never can be located according to the grant; "the description in the petition," to use the words of this Court, in the case of The United States *v.* Arredondo, 13 Peters, 133, "of the locality of the concession, is too indefinite to enable a survey to be made," and the claimant therefore can "take nothing under the concession." The concession is of fifty thousand acres, "south and north of lands at Musquito;" there is no authority, as in the case of The United States *v.* Sibbald, 10 Peters, 321, to make the location at any other place; the inlets or interior bays which open into the coast of Florida, at Musquito, extend for more than fifty miles; how is it possible to locate a tract by means of a description so indefinite?

3. If there is proof of the grant, and if a sufficient location was made; have the prescribed conditions been complied with, so as to vest a valid title in the claimant? The alleged concession bears date in 1802, nineteen years before the surrender of Florida to the United States. The petitioner does not assert the performance of any services; the grant is not given to him as a reward. He "promises positively to carry into effect his settle-

ment, between the period embraced from the date of the grant and the month of December following;" he engages " to restrain the savages from committing robberies and hostilities, who had by their incursions troubled the plantations;" and he says that he has " a large number of new negroes, and that there are some white persons, native citizens of the United States, who wish to join him in the settlement" he proposed.   These are substantial inducements; a large force capable of cultivating the land, and affording protection to the neighbourhood, to be placed upon the tract, within six months.   A grant founded on such inducements, and subject to their fulfilment, was altogether in accordance with the regulations of the Spanish land law, as it existed in Florida. 2 White's New Rec. 288.   If they were not fulfilled, neither by the intention of the parties, nor by the Spanish law, did any title accrue to the grantee; the tract in question was never separated from the royal domain.   In the petition, the claimant himself said, that if the settlement was not carried into effect within the period promised, it would remain discretionary with the Governor to " grant the said tract to any other person, who might ask for it."   " Those who having obtained a concession of lands, have not cultivated them from the time they were granted," says Saavedra, confirmed by Governor Coppinger, " can have no right to them;" and he afterwards adds, that " the certificates (issued by the secretary of the government) are of no value nor effect, unless the prescribed conditions have been complied with; otherwise, such papers deserve no regard, nor can the grantees, by means of them, claim any right to the lands granted, which should now be considered vacant." 2 White's New Rec. 283.   The alleged concession in this case is a certificate of the kind thus referred to.

Mr. Justice WAYNE delivered the opinion of the Court.

Appeal from the Superior Court of East Florida.

The land in controversy in this case is claimed by virtue of an alleged concession or grant, for fifty thousand acres, dated July 29th, 1802.

In the Court below, the claim was adjudged not to be valid.

The evidence offered and read on the trial is,

1. A memorial from Don Augustin Buyck, 22d July, 1802,

with an order annexed by Governor White to the engineer commandant, to report; and the report of the engineer.

2. The decree of Governor White as follows : The land which the party solicits is granted to him in manner as he proposes; and with the condition that he shall not cede any part thereof, to any person whatever, without the knowledge and approbation of the government.

3. An assessment, by order of Governor White, dated 30th October, 1802, upon Buyck, and others, for building a bridge. The assessment upon Buyck being thirty dollars, "for himself and his settlers of the fifty thousand acres of land, south;" attached to which is the return of one Bernardo Segui, of the names of the persons assessed.; such of them as had paid, others who had not, with Segui's receipt, dated a year after, for thirty dollars, paid by one Robira, as attorney for Buyck, said to be "his proportion of the tax," in consequence of a grant of fifty thousand acres of land, and others which he possesses in this province.

The paper purporting to be a grant was received in evidence, without any certificate, that it was the copy of a grant, from an original in the office in which grants are required to be deposited; without proof of the handwriting of the Governor, or of Pierra, who says a certificate was issued; indeed without any official attestation of authenticity, or proof of any kind that such a paper was ever issued, or on file in the proper office. The same may be said of the other papers. One Fontane certifies that he has translated them correctly from Spanish originals. That is all that is said of them. No proof is given that the originals were to be found in the "office of the archives." It is not alleged that they were lost or destroyed, by any mutilation of the records or other accident. The other proof relied upon to sustain the claim, is Segui's receipt, and the papers in connexion with it, already mentioned. Where that paper came from, the record does not show. The authenticity of the Governor's order, assessing the tax; the signature of the person, signing himself government notary; the appointment of Segui to collect the tax; all rest upon the receipt of Segui for Buyck's assessment, and upon the paper purporting to be a report to the Governor of those who had not paid; and of the sum of money which he had in

T 2

hand from those who had paid assessments. We do not intend, however, as the attorney for the United States, in the Court below, did not object to the memorial and grant as evidence, though he did so as to the papers connected with the assessments, to allow any formal objection to the proof of a grant to weigh with us in this decision ; the opinion of the Court rests upon grounds connected with the merits.

The memorialist asks for the land, first stating that he has a large number of ne   negroes, and that some white persons, native citizens of the  nited States of America, wish to join him in the settlement and cultivation of the lands "at Musquito." He prays that his right to the grant may not be denied by the right which others may claim, or pretend to have, on account of former grants to them; because they had suffered a long time to pass without taking any steps to cultivate the lands, and as others are ready to cultivate them; and he promises to carry into effect his settlement by the month of December after the date of his memorial, after which time, if he does not do so, he says it will remain discretionary with the Governor to grant the land to any other person who may ask for it. The Governor replies, the land which the party solicits is granted to him in manner as he proposes, and restrains his alienation of it, without the consent of government. The undertakings of the memorialist were voluntary, and were the inducement held out by him to obtain the grant. None of them were complied with. The forfeiture then of the land results from the conditions not having been performed, which the memorialist himself proposed as the terms upon which he was to hold it, and which were recognised by the Governor as the terms upon which he should have what he asked for. The memorial, report of the engineer, and decree, are all parts of the same instrument, each having a distinct reference to the other. If, therefore, for the purpose of determining the quantity of the land intended to be granted, and where it was granted, we must go out of the decree into the memorial, we must do the like to ascertain the conditions annexed to the grant. Besides, the forfeiture is only in accordance with what the memorialist states had been incurred by others, to whom grants had been made, who had neglected to settle them, and which he says will be his own case, if he does not make his set-

tlement within the time stated in his petition. In this view of the case, then, the grant is without merits; and the judgment of the Court below should be affirmed.

But further, supposing proof of the grant to be made, and that it was free from the conditions, which, not having been complied with, has forfeited it; still it could convey no land, from the want of identity or ascertainable locality.

The memorialist says, wishing to make the settlement and cultivation of the lands at Musquito, he solicits a grant of fifty thousand acres, south and north of said place.

Musquito is an inlet on the eastern coast of the peninsula made by Halifax river, or lagoon, which extends from Musquito bar, northward more than twenty miles, and by the southern, or what is known as Hillsborough lagoon, which extends from Cape Caraverel to Musquito inlet, a distance of forty miles. Both lagoons are navigable for about the same distance by vessels of such draught as can cross the bar. Creeks run into the first from the mainland, and Smyrna is on the western bank of the south lagoon, four or five miles from Musquito bar. Where then shall the land claimed by the appellant be surveyed? Shall it border on the ocean, north and south of the inlet, twenty-five thousand acres on either side to make up the quantity; or on the inner shore of the lagoon in the same way; or shall it be on the mainland, west of the inlet; or on some of the creeks emptying into Halifax river. The description of the grant is, "south and north" of the lands "at Musquito." Musquito is not a designation of a land district fixed and known by the Spanish authorities; nor do we know from any usage the limits of the lands at Musquito. If it be the application of the name of an inlet to lands without and within it; still, how shall boundaries be fixed, within which surveys shall be made, without other specific call than "north and south of lands at Musquito?" The regulations for granting lands in Florida, by the Spanish authorities, required that grants should be made in a certain place, and there were no floating rights of survey out of the place designated in the grant, unless the land granted could not be got there in its entire quantity, and an equivalent was provided for; as in Sibbald's case, reported in 10 and 12 Peters, 313. 488 ; one of the surveys of which was at Turnbull's swamp, at Musquito.

In all of the decisions of this Court upon grants in Florida, it has gone as far as the most liberal equity can go, in adopting some natural, or artificial point, in the description of the grants, however subordinate or minor they may have been, to give locality to grants. Such was the fact in the leading case upon Florida grants. Arredondo, 6 Peters, 133. So in Percheman's case, 7 Peters, 91. Also in the cases of Fleming and Huertas, 8 Peters, 478, 488. Arredondo's case, in 13 Peters, 133, was upon most indefinite calls. No survey had been made whilst Florida was a province of Spain, nor had the grant been surveyed when the case was brought by appeal to this Court. The Court said, "we do not consider the want of a survey, as interfering with the right of the party to the land granted; it must be taken near as may be, as it is described in the petition, where it was asked for, and cannot be taken elsewhere." The Court then declares, if the points indicated in that case for a survey cannot be found, then, that the description was too indefinite for a survey to be made; and that the claimants could take nothing under the concession. And so in this case, the description "south and north of the lands at Musquito," is too indefinite for a survey to be made; for there is nothing in it, which can be aided by relation to something certain. The claimants, then, can take nothing under the concession.

We know from the eighth regulation of Governor White, October 12th, 1803, White's New Rec. 278, that this want of certainty in the description of grants, had been productive of disputes and mistakes. When he declared, that those, for the future, who ask for lands, must indicate a fixed spot; he only re-enforced a neglected law in Florida. Indeed, with a few exceptions, grants in Florida, which have been before this Court, have been particular, in respect to the object from which the survey was to be made.

It is proper for us to remark, that in coming to our conclusion upon this point, we have not been influenced by any of the English common law rules, which make grants void for uncertainty. Such as, for instance, if the king grants land in a peat waste, without ascertaining what part, or the special name of the land, or how bounded, it is void for uncertainty; for there can be no election in that case. Bacon, vol. iv. tit.

Grant, 81; and yet, if an individual so grant, it would be good. We apply to the case, the laws, and ordinances of the government under which the claim originated; and that rule which must be of universal application in the construction of grants, which is essential to their validity, that the thing granted should be so described as to be capable of being distinguished from other things of the same kind, or be capable of being ascertained by extraneous testimony.

The decree of the Court below is affirmed.