# VERNON KENNY LEISTER

## *vs.*

## STATE OF MARYLAND.

*Criminal Law—Bastardy—Plea to Jurisdiction—General Issue Plea—Evidence—Instructions—Impeachment of Witness—Argument of Counsel.*

A pleading interposed by one indicted for bastardy, averring that the fornication did not occur in that county, is not a plea to the jurisdiction, but a mere traverse of one of the material averments of the indictment, and so bad in law as merely equivalent to the general issue plea of not guilty.          p. 520

A technical plea to the jurisdiction must allege facts from which it may be inferred that the court has no jurisdiction over the subject-matter, or over the person of some party to the proceeding, as, for instance, that the alleged offense was not an offense against the laws of the state of the forum, but against a Federal statute or law, or that some party to the proceedings was for some reason not subject to prosecution in the particular forum.          p. 521

Where a plea, which was bad as being equivalent to the general issue plea, was demurred to, and the demurrer was erroneously overruled and the plea was traversed, a trial of the issue thus raised, if not regarded by the court or the parties as a final trial to determine the guilt of the traverser, is to be treated as a nullity.          p. 522

A prosecution for bastardy being a criminal proceeding and being as such affected and controlled by the provisions of the State Constitution relating to the trial of criminal causes, the court is not charged with the duty, nor has it the power, of peremptorily instructing the jury as to matters of law or of fact.          p. 522

In a prosecution for bastardy, the mother of the illegitimate child may testify that defendant gave her money to get "different things," and that when spoken to about marriage he told her to wait until his mother came home, she having previously testified that he had already advised her to "rid herself of" the child, this testimony being admissible to show a recognition of his responsibility for her condition.          p. 523

In a prosecution for bastardy, where the mother of the illegitimate child, in answer to a question asked her on cross-examination as to whether she had given certain testimony before a magistrate, replied that she did not know whether she had so testified, it was proper to exclude a question asked of her on cross-examination as to which was true, what she swore to before the magistrate or what she swore to on the witness stand, there being no evidence that she had testified at all before a magistrate, or any affirmative evidence that she had anywhere given testimony contrary to that which she gave on direct examination. p. 523

In seeking to impeach a witness by proof of statements on a former occasion inconsistent with those made in the course of the trial, the cross-examiner, after interrogating the witness as to such statements, may submit proof of them, and the jury may consider such proof in estimating the credit to be given to the testimony of the witness. p. 523

On a prosecution for bastardy, it was proper to exclude a question asked of the mother of the illegitimate child, as to whether she had been out buggy or automobile riding with any young men other than defendant at about the time of conception, since no evil or sinister inference could be drawn from the fact, if it were a fact, that she had done so. p. 523

On a prosecution for bastardy, evidence as to conversations and correspondence between persons other than the mother of the illegitimate child, offered for the purpose of impeaching her testimony, was properly excluded as hearsay and irrelevant. p. 524

On a prosecution for bastardy, a statement by the State's Attorney that a witness for the defendant, who had testified to having had intercourse with the mother of the child, did not have to tell the jury of it, cannot be regarded as having injured the defendant, it at most merely affecting the credibility of the witness, whom the jury saw and heard, and consequently the refusal of the trial court to strike out the statement is not ground for reversal. p. 524

*Decided June 17th, 1920.*

Appeal from the Circuit Court for Carroll County (FOR-SYTHE, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE and OFFUTT, JJ.

*Guy W. Steele,* for the appellant.

*Alexander Armstrong, Attorney General,* with whom was *Theo. F. Brown, State's Attorney for Carroll County,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The appellant was convicted of bastardy by a jury in the Circuit Court for Carroll County, and sentenced to give bond to the State in the penalty of five hundred dollars to secure the payment of twelve dollars per month for the maintenance of his illegitimate child until it reached the age of twelve years. From that judgment this appeal is taken. The record contains ten exceptions, one of which relates to the Court's ruling on a prayer offered by the appellant in the course of the proceeding; one to the Court's refusal to strike out a statement by the State's Attorney, and the others to questions of evidence.

The indictment in the case charged in the usual form that the appellant had begotten at Carroll County an illegitimate male child, which was afterwards born alive. To this indictment the appellant interposed what is described in the record as a "plea to the jurisdiction," in which he stated that the fornication referred to in the indictment did not take place in Carroll County. This pleading was not a plea to the jurisdiction as that term is usually understood, but was a mere traverse of one of the material averments of the indictment, and possessed none of the *indicia* or elements of a technical plea to the jurisdiction, as that plea is known to the law of this State. A technical plea to the jurisdiction is something more than a mere allegation that the traverser is not guilty

of the crime charged in the indictment, and that is all the
"plea to the jurisdiction" in this case amounts to. Unless
the State proved that the fornication referred to in the in-
dictment occurred at Carroll County, the traverser would be
acquitted, if it did prove it he would be convicted, and
whether the State did or did not prove it could only be deter-
mined by a jury or the court, sitting as a jury. A plea,
therefore, that the fornication did not occur at Carroll Coun-
ty, was in effect equivalent to the general issue plea of "not
guilty," and therefore bad in law. A technical plea to the
jurisdiction must allege facts from which it may be inferred
that the Court has no jurisdiction over the subject matter,
or over the person of some party to the proceeding, as for
instance, that the alleged offense was not an offense against
the laws of the State of the forum, but against a federal or
foreign statute or law, or that some party to the proceeding
was for some reason not subject to prosecution in the partic-
ular forum.

It cannot be questioned that the Circuit Court for Carroll
County had jurisdiction over the subject matter of the pro-
ceeding, that is of the particular offense charged in the in-
dictment, and it is not suggested that the appellant enjoyed
any special privileges or status which prevented his prosecu-
tion in that Court. The demurrer to this plea should there-
fore have been sustained. *Bishop's New Cr. Proc.*, § 736;
*Trem. P. C.* 271; *Hochheimer Cr. Law*, par. 119; *State* v.
*Mitchell*, 83 N. C. 674.

The demurrer was however overruled and the plea tra-
versed. The issue thus made up was tried before the Court,
which found its verdict thereon against the appellant. At
the conclusion of the testimony in that trial, the appellant
submitted a prayer, in which the Court was asked to instruct
itself (sitting as a jury in a criminal case) that there was no
evidence legally sufficient to prove the allegations of the in-
dictment beyond a reasonable doubt, and that its verdict
should be for the defendant. The Court refused this prayer,
and this ruling is the subject of the first exception.

From what has already been said that trial was wholly ir-
regular and it is difficult to see just how any verdict the
Court might render in it could affect any right or interest
either of the State or of the traverser, unless indeed it could
be assumed that the trial before the Court as a jury was the
final trial for the determination of the guilt or innocence of
the traverser. While there would be some reason for that
contention in the fact that the issue tried there was the identi-
cal issue which was later tried before a jury, nevertheless,
as it does not appear to have been so regarded by the Court
or the parties below, we will treat it as a nullity and imma-
terial. But even if it could be assumed that the Court in
holding this preliminary trial was acting within its authority,
there would have been no error in the refusal of this prayer.
A prosecution for bastardy in this State is a criminal pro-
ceeding and as such is affected and controlled by those pro-
visions of the Constitution of Maryland, relating to the trial
of criminal causes. Under those provisions the courts are
not charged with the duty, nor have they the power to per-
emptorily instruct juries trying criminal cases either as to
matters of law or matters of fact. *Luery* v. *State,* 116 Md.
293. The cases cited in the very carefully prepared brief of
the appellant are not at all in conflict with these views.
Those cases relate to the establishment and recognition of cer-
tain rules and principles by which courts are controlled in
the investigation of facts bearing upon the right of a person
charged with crime to be tried in a certain court or in a
certain locality, and not to the weight or sufficiency of the
evidence necessary to establish such facts. There was there-
fore, no error in the ruling of the Court in respect to this
prayer, nor was there any error in its action in overruling
the motion in arrest of judgment, later filed on much the
same ground.

The second, third and fourth exceptions relate to the ad-
mission in evidence of testimony of the mother of the illegit-
imate child, that appellant had given her money to get "dif-
ferent things" and when spoken to about marriage had told

the witness to wait until his mother came home. The witness had already testified that he had advised her, referring to the child, to "rid herself of it." The testimony was admissible as tending to show appellant's recognition of his responsibilty for the woman's condition.

The same witness, after having testified that she had had intercourse with the appellant at Hanover, Pennsylvania, on May 6th and at Carroll County on May 7th, was asked on cross-examination if she had not testified in an examination before a magistrate in Carroll County that she had had intercourse with appellant at Hanover, Pennsylvania, on May 6th and not for some time after that, and had replied that she did not know whether she had so testified, and was then asked a question concluding as follows: "Please tell me which is true, what you swore to in Hanover before the magistrate, or what you swore to on the stand"? The Court sustained an objection to this question and this ruling is the subject of the fifth exception. There was no error in this ruling. The question was bad in form and substance. There was no evidence that the witness had testified at all before any magistrate in Hanover, nor any affirmative testimony that she had testified anywhere that she had not had intercourse with the appellant on May 7th. If the purpose of the cross examiner was to impeach the witness by proof that she had made statements on a former occasion inconsistent with those made in the course of this trial, after having interrogated her in reference to such statements, he could have submitted proof of them, and the jury could then have considered such proof in estimating the credit to be given the testimony of the witness. The same witness was also asked if she had been "out buggy riding or automobile riding during the months of May or June, 1917, with any young men besides your father." The Court sustained an objection to this question and we find no error in this ruling. Automobiles, and to a less extent buggies, are very generally and extensively used for purposes of business and pleasure by perfectly reputable and respectable persons as a convenient and effective

means of transportation, and no evil or sinister inference could be drawn from the fact, if it were a fact, that the witness had on occasions ridden in the one or the other, even if accompanied by young men other than her father.

The seventh, eighth and ninth exceptions relate to the refusal of the Court to permit certain witnesses offered on behalf of the appellant to tell of conversations and correspondence between persons other than the mother of the illegitimate child, apparently with a view of impeaching her testimony. This testimony was obviously hearsay and irrelevant and there was no error in its exclusion.

The last exception relates to the refusal of the Court to strike out a statement made by the State's Attorney in his argument to the jury to the effect that one of the witnesses for the appellant who had testified to having had intercourse with the mother of the child did not have to tell the jury of it. Whether this statement was or not correct is immaterial, for it cannot be assumed that an intelligent jury could be affected by it. At most it merely went to affect the credibility of the witness Williams, whom the jury had seen and whose testimony they had heard, and while the remark had little relevance to any issue in the case, it cannot be said to have injured the appellant.

Finding no errors in the rulings of the lower Court, the judgment will be affirmed.

*Judgment affirmed, with costs.*