STATE OF MARYLAND *v.* BRUCE D. KIDD

[No. 154, September Term, 1976.]

*Decided July 18, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellant.

*Alfred L. Scanlan* with whom were *Shea & Gardner* on the brief, for appellee.

34

ORTH, J., delivered the opinion of the Court.

I

In a criminal cause, when the prosecution introduces an extrajudicial confession or admission [1] given by the defendant to the authorities, the basic rule is that it must, upon proper challenge, establish by a preponderance of the evidence that the statement was obtained (1) voluntarily, and (2) in conformance with the dictates of *Miranda v. State of Arizona,* 384 U. S. 436, 86 S. Ct. 1602 (1966).

(1)

The first requisite is bottomed upon constitutional grounds. In *Bram v. United States,* 168 U. S. 532, 542, 18 S. Ct. 183 (1897), the Supreme Court of the United States declared:

> In criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the fifth amendment to the constitution of the United States commanding that no person "shall be compelled in any criminal case to be a witness against himself."

Any doubt that the admissibility in a state criminal prosecution is tested by the same standard, applied in

---

1. Stewart v. State, 232 Md. 318, 323, 193 A. 2d 40 (1963) defined a confession and an admission:

> A confession is a species of admission, that is to say, an admission that says or necessarily implies that the matter confessed constitutes a crime. An admission which is not a confession is an acknowledgment of some fact or circumstance which, in itself, is insufficient to authorize a conviction but which tends to establish the ultimate fact of guilt.

Despite this "clear distinction," Merchant v. State, 217 Md. 61, 69, 141 A. 2d 487 (1958), "a real and not a fanciful difference," Vincent v. State, 220 Md. 232, 238, 151 A. 2d 898 (1959), between a confession and an admission, it is firmly established that the test for the receipt in evidence against an accused is the same for a confession and an admission. Stewart v. State, *supra,* 232 Md. at 323-324. Therefore, "statement" when used herein means "admission" and in the context of admissibility, "confession" and "admission" are interchangeable.

federal prosecutions since 1897 under the *Bram* holding,[2] was laid to rest by *Malloy v. Hogan*, 378 U. S. 1, 84 S. Ct. 1489 (1964): "[T]he person must not have been compelled to incriminate himself. . . . Governments, state and federal, are thus constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by coercion prove a charge against an accused out of his own mouth. . . . The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement — the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Id.* at 7-8.

The imposition upon the state of the federal constitutional prohibition against compelled self-incrimination effected no change in the voluntariness requirement followed by Maryland for the admissibility of confessions and admissions. More than a century ago, in *Nicholson v. State*, 38 Md. 141, 153 (1873) this Court said that "it is very clear upon all the authorities, that if the confession of the [accused] had been induced by any threat of harm, or promise of worldly advantage held out to him . . . it ought to be excluded." The crucial test was succinctly put in *Taylor v. State*, 238 Md. 424, 429, 209 A. 2d 595 (1965): "If freely and voluntarily given, it is admissible; if not, it is inadmissible." For a statement to be the free and voluntary act of an accused, it must be obtained without force applied, coercion used, hope held out or promise made on the part of the

---

2. Brown v. Mississippi, 297 U. S. 278, 56 S. Ct. 461 (1936) was the first case in which the Supreme Court held that the Due Process Clause prohibited the states from using the accused's coerced confessions against him. At the time, according to Malloy v. Hogan, 378 U. S. 1, 84 S. Ct. 1489 (1964), it felt impelled in the light of Twining v. New Jersey, 211 U. S. 78, 29 S. Ct. 14 (1908) to say that its conclusion did not involve the privilege against self-incrimination. But, *Malloy* observed, 378 U. S. at 6-7, this distinction was soon abandoned. *See* Jackson v. Denno, 378 U. S. 368, 380-388, 84 S. Ct. 1774 (1964) for a discussion of the "short-lived departure from the prior views of the Court" expressed in Bram v. United States, 168 U. S. 532, 18 S. Ct. 183 (1897).

With respect to the voluntariness rule in federal prosecutions and the privilege against self-incrimination as it related to confessions under the common law, *see* Dennis v. Warden, 6 Md. App. 295, 297-300, 251 A. 2d 909, *cert. denied*, 255 Md. 740 (1969).

authorities. *Abbott v. State*, 231 Md. 462, 465, 190 A. 2d 797 (1963). In other words, a confession or admission is not "voluntary" if it is the product of physical or psychological coercion. This test has been referred to as voluntariness in the traditional sense, and we shall so refer to it here.

(2)

*Miranda v. State of Arizona, supra*, 384 U. S. at 478, expressly affirmed that "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." The Supreme Court said in *Davis v. State of North Carolina*, 384 U. S. 737, 740, 86 S. Ct. 1761 (1966): "The review of voluntariness in cases in which the trial was held prior to our decisions in *Escobedo* [*v. State of Illinois*, 378 U. S. 478, 84 S. Ct. 1758 (1964)] and *Miranda* is not limited in any manner by these decisions [*Davis* and *Johnson v. New Jersey*, 384 U. S. 719, 86 S. Ct. 1772 (1966) in which *Miranda* was held to be applied prospectively only]."

*Miranda* held:

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.[3] *Id.* at 444.

Thus, *Miranda* impressed procedural safeguards on the traditional test of voluntariness. The procedural safeguards are warnings to be given. They were expressly set out and explained in detail in *Miranda, supra*, 384 U. S. at 444 and 479, and their familiarity in the law makes it unnecessary to repeat them here. These warnings are not in themselves rights protected by the Constitution but are instead

---

**3.** "Custodial interrogation" was said by the Court to mean "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. State of Arizona, 384 U. S. 436, 444, 86 S. Ct. 1602 (1966).

measures to insure that the privilege against compulsory self-incrimination is protected. *Michigan v. Tucker*, 417 U. S. 433, 444, 94 S. Ct. 2357 (1974). Thus, they have no constitutional basis, but are prophylactic rules created by judicial decision to safeguard that constitutional privilege. *Id.* at 445-446. The defendant may waive effectuation of the *Miranda* safeguards, provided the waiver is made voluntarily, knowingly and intelligently, but until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained through an interrogation can be used against him. *Miranda v. State of Arizona, supra,* 384 U. S. at 449 and 479.

As we have indicated, the burden is on the State of proving that a confession or admission is voluntary in the traditional sense and that there has been compliance with the *Miranda* safeguards. "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession . . . . Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." *Jackson v. Denno,* 378 U. S. 368, 376-377, 84 S. Ct. 1774 (1964). This determination must "appear from the record with unmistakable clarity." *Sims v. Georgia,* 385 U. S. 538, 544, 87 S. Ct. 639 (1967). In Maryland, two steps are involved in this procedure, which is applicable to a case tried before a jury, *Day v. State,* 196 Md. 384, 399, 76 A. 2d 729 (1950), and without a jury, *Ralph v. State,* 226 Md. 480, 487, 174 A. 2d 163 (1961), *cert. denied,* 369 U. S. 813 (1962). The trier of fact passes on traditional voluntariness only after the judge, upon a hearing, out of the presence of the jury, has fully and independently resolved the issues against the accused. *Jackson v. Denno, supra,* 378 U. S. at 378. *See Dempsey v. State,* 277 Md. 134, 143-146, 355 A. 2d 455 (1976); *Gill v. State,* 265 Md. 350, 357-358, 289 A. 2d 575 (1972); *Sabatini v. State,* 14 Md. App. 431, 449-451, 287

A. 2d 511, *cert. denied,* 265 Md. 742 (1972); *Mulligan v. State,* 10 Md. App. 429, 431-433, 271 A. 2d 385 (1970); *Murphy v. State,* 8 Md. App. 430, 436-437, 260 A. 2d 357 (1970); *Barnhart v. State,* 5 Md. App. 222, 223-227, 246 A. 2d 280 (1968). The federal constitutional test with respect to the judge's preliminary decision is that of a preponderance of the evidence, *Lego v. Twomey,* 404 U. S. 477, 92 S. Ct. 619 (1972), and the test with respect to the final determination by the trier of fact is beyond a reasonable doubt, *Linkins v. State,* 202 Md. 212, 223, 96 A. 2d 246 (1953).

The burden upon the State to establish affirmatively the admissibility of the confession or admission arises upon proper objection. *Wainwright v. Sykes,* 433 U. S. 72, 86-87, 97 S. Ct. 2497, 45 U.S.L.W. 4807, 4811 (1977). *See Jackson v. Denno, supra,* 378 U. S. at 380; *Tucker v. State,* 237 Md. 422, 425, 206 A. 2d 691 (1965); *Gaudio and Bucci v. State,* 1 Md. App. 455, 463, 230 A. 2d 700 (1967). The requirement of a proper challenge applies to both aspects of admissibility — constitutional voluntariness and compliance with *Miranda's* prophylactic safeguards. Fundamental rights can be waived by an accused, *State v. McKay,* 280 Md. 558, 570, 375 A. 2d 228 (1977), and the right to a hearing and determination by the trial judge of the admissibility of a confession or admission provides no exception. State procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected. *Mapp v. Ohio,* 367 U. S. 643, 658, n. 9, 81 S. Ct. 1684 (1961). *See Porter v. State,* 230 Md. 535, 536-537, 187 A. 2d 870 (1963).

In Maryland, objection to the admission of evidence is governed by Maryland Rule 522 d, made applicable to criminal causes by Rule 725 f. The Rule encompasses the admissibility of confessions and admissions. Objection to the admission of evidence is treated as waived unless made at the time when such evidence is offered, or as soon thereafter as the objection to its admissibility shall have become apparent, Rule 522 d 2, and unless requested by the court, it is not necessary to state the grounds for the objection, Rule 522 d 1. Thus "where the trial court does not request a statement of the

grounds for an objection, a general objection is sufficient to preserve all grounds which may exist." *von Lusch v. State,* 279 Md. 255, 262-263, 368 A. 2d 468 (1977). "On the other hand, where the trial court does request specific grounds for an objection, the objector is bound by the grounds he states, and he normally is deemed to have waived any objection to the evidence on a ground not stated." *Id.* at 263, citing *Wilt v. Wilt,* 242 Md. 129, 218 A. 2d 180 (1966); *Eckhart v. Ayres,* 240 Md. 153, 213 A. 2d 493 (1965). This principle was extended by judicial decision, so that "where one objecting to the admission of evidence, although not requested by the court to state his grounds, goes ahead and delineates specific grounds for his objection he will be bound by those grounds and will ordinarily be deemed to have waived other grounds not mentioned." *von Lusch v. State, supra,* 279 Md. at 262-263.

## II

Prior to *Miranda,* the opinions of this Court reflected no distinction as to the rules regarding admissibility between confessions or admissions of a defendant offered by the prosecution to prove its case in chief and those offered to impeach a defendant's testimony at trial. *Miranda* appeared to buttress this notion with respect to its safeguards. The Court of Special Appeals of Maryland, the appellate courts of 13 other states, and six federal courts of appeals read *Miranda* as forbidding the use by the prosecution of statements by an accused, be they confessions or admissions, inculpatory or exculpatory, stemming from custodial interrogation, unless there was compliance with the requirements of *Miranda.*[4] *See Harris v. New York,* 401

---

4. Miranda v. State of Arizona, 384 U. S. 436, 476, 86 S. Ct. 1602 (1966), asserted that the warnings required, together with a waiver of the safeguards, must be shown as "prerequisites to the admissibility of *any* statement made by a defendant." (Emphasis added). It drew no distinction between confessions and admissions, or between inculpatory statements and statements alleged to be merely exculpatory. *Id.* at 476. It explained:

If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, *statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the*

U. S. 222, 231, n. 4, 91 S. Ct. 643 (1971) (Mr. Justice Brennan dissenting). The Court of Special Appeals flatly held in *Franklin v. State,* 6 Md. App. 572, 578, 252 A. 2d 487, *cert. denied,* 255 Md. 741 (1969), 399 U. S. 912 (1970) that "[t]he fact that [a defendant's] admissions may have been used for the purpose of impeaching his credibility as a witness, rather than as substantive evidence of guilt, does not, in our judgment, dispense with the requirement that the State affirmatively show on the record that the statement was in compliance with the requirements of *Miranda* . . . ." *Harris v. New York, supra,* as affirmed and explicated in *Oregon v. Hass,* 420 U. S. 714, 95 S. Ct. 1215 (1975) dispelled this view.

The issue decided in *Franklin* was presented to the Supreme Court in *Harris* under circumstances which, as recounted in *Hass* at 720-721, were as follows:

> [T]he defendant was charged by the State in a two-count indictment with twice selling heroin to an undercover police officer. The prosecution introduced evidence of the two sales. Harris took the stand in his own defense. He denied the first sale and described the second as one of baking powder utilized as part of a scheme to defraud the purchaser. On cross-examination, Harris was asked whether he had made specified statements to the police immediately following his arrest; the statements partially contradicted Harris' testimony. In response, Harris testified that he could not remember the questions or answers recited by the prosecutor. The trial court instructed the jury that the statements attributed to Harris could be used only in passing on his credibility and

---

*statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement.* (emphasis added). *Id.* at 477.

It made the flat declaration that unless and until the required warnings and effective waiver are demonstrated by the prosecution at trial "no evidence obtained as a result of interrogation can be used against him." *Id.* at 479.

not as evidence of guilt. The jury returned a verdict
of guilty on the second count of the indictment.

Harris made no claim that the statements made to the police
were coerced or involuntary, but the prosecution had not
sought to use them in its case in chief, for it conceded that
they were inadmissible under *Miranda* because Harris had
not been advised of his rights to appointed counsel. A
majority of the Court in *Harris* recognized that "[s]ome
comments in the *Miranda* opinion can indeed be read as
indicating a bar to use of an uncounseled statement for any
purpose," but those comments were disposed of simply by
asserting that "discussion of the issue was not at all
necessary to the Court's holding and cannot be regarded as
controlling." *Harris v. New York, supra,* 401 U. S. at 224.
The opinion of the Court declared:

> It does not follow from *Miranda* that evidence
> inadmissible against an accused in the prosecu-
> tion's case in chief is barred for all purposes,
> provided of course that the trustworthiness of the
> evidence satisfies legal standards. *Id.* at 224.

It held that Harris's "credibility was appropriately
impeached by use of his earlier conflicting statements." *Id.*
at 226.[5]

In *Oregon v. Hass, supra,* a majority of the Court affirmed
the position it had taken in *Harris.* The only factual
distinction between the two cases was that in *Harris* the
*Miranda* warnings given were defective and in *Hass* they
were proper but the police officer obtained inculpatory
statements after Hass said he would like to telephone his

---

5. The holding was based on Walder v. United States, 347 U. S. 62, 74 S.
Ct. 354 (1954). The rationale of the decision may be found in the
observations that "[a]ssuming that the exclusionary rule has a deterrent
effect on proscribed police conduct, sufficient deterrence flows when the
evidence in question is made unavailable to the prosecution in its case in
chief," Harris v. New York, 401 U. S. 222, 225, 91 S. Ct. 643 (1971), and
"[t]he shield provided by *Miranda* cannot be perverted into a license to use
perjury by way of a defense, free from the risk of confrontation with prior
inconsistent utterances," *id.* at 226.

42

attorney and was told he could do so "as soon as we got to the office." There was no evidence that the statements thereafter obtained were involuntary or coerced. Hass took the stand at his criminal trial and gave testimony at variance with the statements previously given the police after he said he wanted to see an attorney. Hass knew that those statements had been ruled inadmissible for the prosecution's case in chief. *Oregon v. Hass, supra,* 420 U. S. at 715-719 and 720-722. In rebuttal the prosecution offered and the trial court admitted the statements which previously had been held inadmissible, and the court instructed the jury that the evidence went only to credibility and not to proof of guilt. The Oregon Court of Appeals held that the statements were improperly used to impeach Hass's testimony and the Supreme Court of Oregon affirmed. The majority opinion of the Supreme Court of the United States reversed, holding that the Oregon appellate courts were in error when they ruled that the rebuttal testimony was inadmissible on the Fifth and Fourteenth Amendment grounds for purposes of Hass's impeachment. *Id.* at 723-724. It said:

> As in *Harris,* it does not follow from *Miranda* that evidence inadmissible against Hass in the prosecution's case in chief is barred for all purposes, always provided that "the trustworthiness of the evidence satisfies legal standards." 401 U. S. at 224, 91 S. Ct., at 645. Again, the impeaching material would provide valuable aid to the jury in assessing the defendant's credibility; again, "the benefits of this process should not be lost," *id.,* at 225, 91 S. Ct., at 645; and again, making the deterrent-effect assumption, there is sufficient deterrence when the evidence in question is made unavailable to the prosecution in its case in chief. If all this sufficed for the result in *Harris,* it supports and demands a like result in Hass' case. Here, too, the shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or

even perjuriously, free from the risk of confrontation with prior inconsistent utterances.

We are, after all, always engaged in a search for truth in a criminal case so long as the search is surrounded with the safeguards provided by our Constitution.[6] *Id.* at 722.

The full impact of *Harris* has not previously been squarely before the appellate courts of this State. This Court has not considered the *Harris* holding, affirmed and extended in *Hass,* and the Court of Special Appeals, although presented with issues relating to *Harris* in *Cooper v. State,* 14 Md. App. 106, 286 A. 2d 579 (1972), *Layman v. State,* 14 Md. App. 215, 286 A. 2d 559 (1972) and *Sabatini v. State, supra,* found in each case that it was not necessary to reach the many unanswered questions posed by *Harris. Cooper, supra,* 14 Md. App. at 116, n. 4 listed some of these questions, but left their determination for a time when they would be squarely before the court. *See Kidd v. State,* 33 Md. App. 445, 449, 366 A. 2d 761 (1976). The case *sub judice* requires that some of the questions be resolved.

### III

Bruce D. Kidd, charged by a criminal information with the statutory offenses of possessing heroin in sufficient quantity to indicate reasonably an intent to manufacture and distribute (1st count) and with possessing that

---

6. The majority in Oregon v. Hass, 420 U. S. 714, 723, 95 S. Ct. 1215 (1975), noting that "[i]n any event, the balance was struck in *Harris,*" and declaring "we are not disposed to change it now," explained:

One might concede that when proper *Miranda* warnings have been given, and the officer then continues his interrogation after the suspect asks for an attorney, the officer may be said to have little to lose and perhaps something to gain by way of possibly uncovering impeachment material. This speculative possibility, however, is even greater where the warnings are defective and the defect is not known to the officer.

It gave a caveat:

If, in a given case, the officer's conduct amounts to an abuse, that case, like those involving coercion or duress, may be taken care of when it arises measured by the traditional standards for evaluating voluntariness and truthworthiness. *Id.* at 723.

controlled dangerous substance (2nd count), was found guilty under the 1st count by a jury in the Criminal Court of Baltimore and sentenced to imprisonment for a term of eight years. Neither the evidence adduced by the State to prove the charges nor that presented by Kidd in his defense was complicated or subtle. The State's case in chief showed that Kidd, a member of a crowd standing on a corner, fled upon the arrival of police officers in plainclothes driving an unmarked car. He was pursued by two of the officers, Alvin Winkler and William B. Smith, and during his flight, threw away 18 bags of heroin. Winkler apprehended Kidd; Smith recovered the contraband. In his defense, Kidd denied having discarded the heroin. His explanation for his departure from the scene was that his daughter had hurt her knee and he was walking quickly to his car to take her to the hospital when the officers stopped him. This direct conflict between the State's evidence and the defendant's evidence was for the trier of fact to resolve. If the jury believed the State's witnesses, the evidence was sufficient in law for it to find Kidd guilty of the crimes charged. On the other hand, if they believed Kidd, a verdict of not guilty was called for, the evidence not being legally sufficient to convict. *See Thomas v. State*, 277 Md. 314, 320, 353 A. 2d 256 (1976); *Williams v. State*, 5 Md. App. 450, 459, 247 A. 2d 731 (1968). Therefore, the credibility of the witnesses was of primary importance. Obviously recognizing this, the State attempted to impeach Kidd's credibility. On cross-examination the prosecutor asked: "Did you ever tell Officer Winkler that you were a one bag habit man?" Kidd objected and after argument at a bench conference, the objection was overruled. "In response to the question, [Kidd] denied any such conversation with Winkler. He denied that he was a user on May 9, 1975, but admitted that he had been a heroin user a year previous to the incident." The State called Winkler in rebuttal. "He testified, over objection, that [Kidd] admitted to him that he was an addict and that he had approximately 'a one-bag-a-day habit.' There was no testimony that the *Miranda* warnings had been given or that any rights had been waived. There was never a hearing, out of the presence

of the jury or otherwise, on the voluntariness of this statement made to Officer Winkler." [7] It is not disputed that Kidd's statement constituted an "admission" within the definition of that term, and that it was obtained during a "custodial interrogation." According to Officer Winkler, Kidd made the statement at the police station after he had been arrested and while he was being questioned in order to complete an "addict form."

On direct appeal, the Court of Special Appeals, holding that the trial judge erred in admitting the statement Kidd was alleged to have made to Winkler, reversed the judgment and remanded the case for a new trial, *Kidd v. State, supra.*

Upon petition by the State we certified the case for review. We affirm the judgment of the Court of Special Appeals. We agree that the trial court erred in admitting the statement and that the error, not being harmless, required reversal of the judgment. *See Dorsey v. State,* 276 Md. 638, 659, 350 A. 2d 665 (1976). We reach that result, however, by following a different path than that travelled by the Court of Special Appeals.

As we read the opinion of the Court of Special Appeals, it accepted that Kidd's statement was within the *Harris-Hass* limitation so that any failure with respect to the *Miranda* safeguards would not preclude its receipt in evidence for the purpose of impeachment. Recognizing that a defendant's constitutional right to have a fair hearing and reliable determination of the admissibility of his confession or admission is predicated upon a proper challenge, *Kidd v. State, supra,* 33 Md. App. at 456-457, it proceeded on the premise that Kidd interposed a general objection to the introduction of his statement which was sufficient to present the issue of its voluntariness in the constitutional sense. It found reversible error in the failure of the trial judge to conduct a hearing on that issue. *Id.* at 474-475.

---

**7.** This compendium of the evidence and quotations are from an agreed statement of facts included in the State's brief pursuant to Maryland Rule 828 g. The State also included in an appendix to its brief a portion of the transcript of the proceedings setting out the testimony of Kidd on cross-examination and of Winkler in rebuttal. We proceed to decision on the agreed statement of facts and the appended transcript of testimony.

On the agreed statement of facts and record extract placed before us, we think that Kidd did not make a general objection to the admission of his statement and that the reasons he specified for the objections he did make were not sufficient, in the circumstances, to make known to the trial judge that he challenged its voluntariness. Therefore, he waived that issue, so that no hearing on voluntariness in the traditional sense was required. It is perfectly clear, however, that, although *Harris v. New York, supra,* was not mentioned by name, the admissibility of the statement was argued under the objection made on the basis of the *Harris* holding and admitted under the trial judge's interpretation of that holding. The trial judge said at the bench conference relating to the admission of the statement:

> If there is a confession or an admission or some statement by the defendant that does not comply with *Miranda* [*v. State of Arizona,* 384 U. S. 436, 86 S. Ct. 1602 (1966)] rules, you cannot introduce it on direct, but you can if the defendant takes the stand and denies it, then you can rebut his denial by putting on the statement that would not have been admissible had he not taken the stand.[8]

---

8. We observe that the general rule is that the credit to be given a witness may be impeached by showing that he has made statements which contradict his testimony in respect to material facts (but not in respect to facts which are collateral, irrelevant or immaterial), provided a proper foundation has been laid. Smith v. State, 273 Md. 152, 157-160, 328 A. 2d 274 (1974); Joppy v. Hopkins, 231 Md. 52, 56, 188 A. 2d 545 (1963), and cases cited therein; Kantor v. Ash, 215 Md. 285, 290, 137 A. 2d 661 (1958); Mahan v. State, 172 Md. 373, 380, 191 A. 575 (1937); Davis v. State, 38 Md. 15, 50 (1873). The foundation is laid by interrogating the witness as to when, the place at which, and the person to whom such contradictory statements were made. This is but fair and just in order that the witness may be enabled to refresh his recollection in regard to such statements, and be afforded the opportunity of making such explanation as he may deem necessary and proper. Balto. Transit Co. v. Castranda, 194 Md. 421, 439, 71 A. 2d 442 (1950); O'Brien v. State, 126 Md. 270, 285, 94 A. 1034 (1915); Brown v. State, 72 Md. 468, 475, 20 A. 186 (1890). If the witness denies making the designated statement or asserts that he does not remember whether he made it, the foundation contemplated' by the general rule for the introduction of the statement has been satisfied. *See* Campbell, etc. v. Patton, 227 Md. 125, 141, 175 A. 2d 761 (1961); Moxley v. State, 205 Md. 507, 516-517, 109 A. 2d 370 (1954); Myers v. State, 137 Md. 482, 490, 113 A. 87 (1921); Leister v. State, 136 Md. 518, 523, 111 A. 78 (1920). *See generally*

At the culmination of the bench conference, the judge again asserted that even if a statement were inadmissible under *Miranda* in the State's case in chief, "once the defendant takes the stand, if he did give a statement, although not in compliance with *Miranda*, it can be introduced if he denies it." We do not find the *Harris* holding to be that broad.

We construe *Harris* and *Hass* as requiring that the issues sought to be impeached by the challenged extrajudicial statement of the accused be initiated by the accused on direct examination. The prosecution is not permitted to use tainted evidence to impeach an issue which it first solicited on cross-examination. Although neither *Harris* nor *Hass* expressly declares such a principle, each was decided in the factual posture that the matter sought to be impeached was brought out by the defendant on his direct examination. In *Walder v. United States*, 347 U. S. 62, 74 S. Ct. 354 (1954), on which Harris was bottomed, the impeachment was as to matters included in the direct examination, and there is suggestion in *Walder* that it be so restricted. *Agnello v. United States*, 269 U. S. 20, 46 S. Ct. 4 (1925) prohibited the impeachment of statements made on cross-examination and has not been explicitly overruled. "This cross/direct distinction requires the witness himself to open the door to his own impeachment and is consistent with the purpose underlying the impeachment exception — to prevent a witness from capitalizing on the prosecution's inability to rebut perjurious statements with illegally obtained evidence." Comment, 73 Colum. L. Rev. 1476, 1485 (1973); *see Walder v. United States, supra,* 347 U. S. at 65. *Harris, supra,* 401 U. S. at 225, asserted that a defendant, "[h]aving voluntarily taken the stand, . . . was under an obligation to speak truthfully and accurately . . . ." But this obligation extends also to cross-examination. The Maryland rule is that "[a] witness generally may be cross-examined on any matter relevant to the issues, and the witness's credibility is always

Cooper v. State, 14 Md. App. 106, 110-111, 286 A. 2d 579 (1972); Sanders v. State, 1 Md. App. 630, 640-641, 232 A. 2d 555 (1967).

No question was raised in the case *sub judice,* below or on appeal, regarding the laying of the foundation for the introduction of the impeaching statement.

relevant." *Smith v. State,* 273 Md. 152, 157, 328 A. 2d 274 (1974). J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶607[09] (1975) however, observes, at page 607-89:

> If impeachment by illegally obtained evidence is then allowed to impeach the defendant's general credibility regardless of what he testified to on direct, no way remains for a defendant who takes the stand to avoid having the suppressed evidence come to the jury's attention. Consequently the defendant would be deterred from taking the stand if he fears that evidence might be used to impeach him even though his testimony could provide valuable aid to the jury in ascertaining the truth.

*Weinstein* suggests, and we agree, that this result seems unwarranted:

> The Court in *Harris* stressed the jury's need to assess credibility, but the jury's opportunity to hear all of the relevant evidence is highly significant in accurate and just determinations. If the defendant's right to take the stand and his right to have illegally obtained evidence suppressed are to have any significance at all, *Harris* should be restricted to instances where defendant on direct examination initiated the issue to which impeachment is directed. *Id.* at page 607-90.

For cases tending to support this proposition *see United States v. Caron,* 474 F. 2d 506, 508 (5th Cir. 1973); *United States ex rel. Wright v. LaVallee,* 471 F. 2d 123, 125-127 (2nd Cir. 1972); *United States v. Keilly,* 445 F. 2d 1285, 1289 (2nd Cir. 1971); *United States ex rel. Walker v. Follette,* 443 F. 2d 167, 170 (2nd Cir. 1971); *Cowan v. United States,* 331 A. 2d 323, 325 (D.C.C.A. 1975); *People v. Brown,* 353 N.E.2d 244, 247 (Ill. App. 1976); *People v. Hearn,* 341 N.E.2d 129, 130 (Ill. App. 1976); *Davis v. State,* 271 N.E.2d 893, 895 (Ind. 1971). *Compare Walls v. State,* 279 So. 2d 95, 96 (Fla. App. 1973).

*People v. Taylor,* 501 P. 2d 918 (Cal. 1972), *cert. denied,* 414 U. S. 863 (1973), appears to be the first post-*Harris* case to pass directly on the issue. The majority concluded in the

circumstances of the case that it was error of constitutional dimension to allow the prosecutor to inquire on cross-examination whether the defendant had ever been arrested with a balloon of heroin in his possession, and to prove that fact over the defendant's denial by the introduction of the testimony of a police officer as to a conflicting statement made by the defendant obtained in violation of *Miranda, id.* at 925. The court unanimously agreed (the dissenters concurred with the majority on this point) that *Harris* required that the testimony sought to be impeached by illegally obtained evidence be volunteered on direct examination. *Id.* at 924-925 (majority opinion) and at 928-929 (dissenting opinion). *See* the comment added to the published version of *Cannito v. Sigler,* 321 F. Supp. 798, 802, n. 1 (D. Neb. 1971), noting that the subsequently announced *Harris* decision required that the matter sought to be impeached must first have been made on direct examination.

We also construe *Harris* and *Hass* as limiting the impeachment exception to the specific credibility of the defendant on matters as to which there is a contradiction between his testimony and the impeaching statement. The limitation of *Miranda* does not extend to the defendant's credibility generally, but to his specific credibility arising from a realistic contradiction between the issues he initiated on direct examination and the impeaching statement. "The sine qua non of impeaching a witness' specific credibility is that the proffered evidence contradict statements made during his testimony. While the contradiction need not be a direct one, the [trier of fact] must be able to reasonably infer some inconsistency between the witness' testimony and the impeaching evidence." Comment, 73 Colum. L. Rev. 1476, 1485 (1973). *Weinstein* at page 607-90 points out that this has been done by lower federal courts which have restricted use of statements obtained through un-constitutional means to contradiction of a specific false statement made by the defendant on direct examination. He lists the cases in note 27 at page 607-90. *See also United States v. Trejo,* 501 F. 2d 138, 145 (9th Cir. 1974); *People v.*

*Taylor, supra,* 501 P. 2d at 923; *Dornau v. State,* 306 So. 2d 167, 170 (Fla. App. 1974), *cert. denied,* 422 U. S. 1011 (1975); *Commonwealth v. Woods,* 312 A. 2d 357, 359 (Pa. 1973), *cert. denied,* 419 U. S. 880 (1974).

It follows from what we have said that the trial judge was wrong in admitting the challenged statement into evidence under the *Harris-Hass* impeachment exception to the *Miranda* requirements because the exception was not applicable. The State sought to impeach by Kidd's extrajudicial statement his denial on cross-examination that he was a user of heroin at the time of his arrest. According to the agreed statement of facts and the record extract placed before us, the issue whether Kidd was a user of heroin at the time of his arrest was first introduced by the State on cross-examination of Kidd. On direct examination Kidd made no reference to using heroin; he simply made a bare denial of the allegation of the police officers that he had thrown away 18 bags of heroin shortly before his apprehension on 9 May 1975. We see no reasonable inference of inconsistency, sufficient to invoke the impeachment exception of *Harris-Hass,* between Kidd's direct testimony and the impeaching statement attributed to him. One of the controlling rationales of *Harris* was that, although it is the privilege of every criminal defendant to testify in his own defense, that privilege cannot be construed to include the right to commit perjury. *Harris v. New York, supra,* 401 U. S. at 224. Certainly, even if Kidd had admitted in testifying that he was a user of heroin at the time of his arrest, that testimony would not be in such conflict with his denial that he threw away 18 bags of heroin as to require the jury to conclude that he had committed perjury. The reasonable inference which marked the inconsistency between the defendant's direct testimony and the impeaching statement in each of *Harris* and *Hass* was not present here.

The *Harris* limitation upon the *Miranda* requirements not being applicable, and there being no suggestion that the *Miranda* warnings were given and the rights thereunder effectively waived, *Miranda's* strictures precluded the admission of the statement into evidence regardless of its

voluntariness *vel non* in the traditional sense. The short of it is that the judgment entered in the trial court must be reversed because the challenged statement was admitted by the trial judge on the basis that it was within the *Harris-Hass* limitation of *Miranda* when, on the facts before us, it was not. Therefore, the judgment of the Court of Special Appeals is affirmed.[9]

> *Judgment of the Court of Special Appeals affirmed; costs to be paid by the Mayor and City Council of Baltimore.*

---

**9.** Left unanswered is the obvious question of the meaning of the phrase "the trustworthiness of the evidence satisfies legal standards" in the proviso to which admissibility of a statement otherwise within the impeachment exception is subject. The resolution of that question is not necessary for decision of this appeal and we leave it for future consideration.